UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

St. Joseph Solutions, LLC,

       Case No.: 1:11-cv-388

       Plaintiff,

    v.

       Judge Michael R. Barrett

Microtek Medical, Inc.,

       Defendant.

**<u>OPINION & ORDER</u>**

This matter is before the Court on Defendant Microtek Medical, Inc.'s ("Microtek") Motion to Transfer Venue or to Dismiss for Failure to State a Claim (Doc. 6).[1]  Plaintiff St. Joseph Solutions, LLC ("SJS") has filed a response in opposition (Doc. 7), and Microtek has filed a reply in support (Doc. 8).  This matter is ripe for review.

Plaintiff's Amended Complaint (Doc. 4) alleges two causes of action: (1) breach of contract (Doc. 4 ¶¶ 48–51), and (2) correction of inventorship pursuant to 35 U.S.C. § 256 (Doc. 4 ¶ 52).  Plaintiff seeks compensatory damages, a correction of inventorship, a license to a patent currently held by Defendant, and costs and attorney's fees under 35 U.S.C. § 285.  (Doc. 4, 12; Doc. 6, 3.)  The Court summarizes its rulings below.

I.    **Background**

As construed in Plaintiff's favor, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), Plaintiff's Amended Complaint (Doc. 4) states the following facts.  Plaintiff SJS is an Ohio LLC located in Springboro, Ohio, which is within the Southern District of

---

[1] All Court document citations are to Docket Entry numbers.

Ohio. (Doc. 4 ¶ 2.) SJS was formed for the specific purpose of promoting a patented invention created by Ms. Jennifer Giroux. The invention is "a portable dispenser of hygienic stethoscope sleeves intended to prevent the spread of infection from patient to patient." (Doc. 4 ¶ 1.) Ms. Giroux first conceived of this invention in 2000 while working as a registered nurse. (Doc. 4 ¶ 8.) The invention dispenses stethoscope sleeves from a housing attached to the neck of the stethoscope. These sleeves cover the "bell" of the stethoscope, allowing its use without the bell touching multiple patients—only the disposable sleeves touch the patient. (Doc. 4 ¶ 8.)

After filing an application with the United States Patent and Trademark Office ("USPTO"), Ms. Giroux was issued U.S. Pat. No. 6,575,917 (the '917 patent) on June 10, 2003. Ms. Giroux assigned the '917 patent to SJS, and SJS has since retained all right, title, and interest in the '917 patent. (Doc. 4 ¶ 10.)

In 2005, Plaintiff SJS and Defendant Microtek met at Microtek's offices in Georgia to discuss developing the '917 patent into a commercial product, which became known as the "StethoClean." (Doc. 4 ¶ 11; Doc. 6, 2.) Microtek is a Mississippi corporation headquartered in Columbus, Mississippi. (Doc. 4 ¶ 3.) SJS and Microtek entered into a contract (the "Contract") (Doc. 1-1), effective October 13, 2005, for the joint development and marketing of a product embodying the '917 patent. (Doc. 4 ¶¶ 13, 14.) Section 3.7 of the Contract states as follows:

> Microtek and St. Joseph agree to collaborate with each other in the design and development of Product. In furtherance of this collaboration, Microtek and St. Joseph agree that Jennifer S. Giroux R.N., a member of the St. Joseph team, will provide design and development consulting, as well as medical usage feedback consulting, to Microtek from the Effective Date through design and development of Product. During this period, Microtek will provide a point person to

2

work with Ms. Giroux to streamline communication
throughout the duration of the design and development of
product.

(Doc. 4 ¶ 15; Doc. 1-1, 4.)  Section 5.1 of the Contract states as follows:

St. Joseph and Microtek agree that any Improvements to the
Product jointly invented by Microtek and St. Joseph shall be
jointly owned by Microtek and St. Joseph.  Any
improvements invented solely by St. Joseph shall be the
property of St. Joseph and any improvements invented
solely by Microtek shall be the property of Microtek.

(Doc. 4 ¶ 16; Doc. 1-1, 5.)  Section 5.1 of the Contract in particular is most at issue in

this case.

Plaintiff alleges that it performed all of its obligations under the Contract.  (Doc. 4

¶ 17.)  Plaintiff further alleges that Ms. Giroux contributed significantly to the design and

development of the commercial product, and she was the only member of Defendant's

design and development team with clinical healthcare experience.  (Doc. 4 ¶¶ 17, 18.)

Ms. Giroux participated in the design and development process from Ohio by telephone,

fax, email, and courier delivery service, and in person by traveling to Georgia and

Mississippi.  (Doc. 4 ¶ 19.)  Plaintiff alleges that Ms. Giroux organized and conducted

field tests and product sampling of various versions of the commercial product and that

partly because of these tests, Ms. Giroux conceived of certain improvements that were

incorporated into the final commercial product.  (Doc. 4 ¶ 19.)

Plaintiff also maintains that it dedicated significant time and effort to promoting

the product by sending representatives to healthcare conferences throughout the

country.  It alleges that it had considerable success in sparking interest for the product.

(Doc. 4 ¶ 20.)  While doing this promotion, Ms. Giroux was instructed by Defendant not

to give out her own contact information or that of SJS, but rather to give Microtek's

3

contact information.  Plaintiff alleges that Ms. Giroux diligently passed promotional information on to Microtek but that Microtek failed to follow up on the information she provided, thereby squandering marketing opportunities.  (Doc. 4 ¶ 21.)

After the commercial product launched in November 2007, Plaintiff alleges that Microtek inexplicably abandoned any attempts at successful commercialization.  (Doc. 4 ¶ 22.)  Plaintiff alleges that Defendant did not attempt to make any major sales of the product, Defendant failed to line up a manufacturer for the product, and it soon stopped communicating with SJS regarding plans to commercialize the product effectively.  (Doc. 4 ¶¶ 23, 24, 26.)  Plaintiff further alleges that Microtek set a price for the product well above what the market would support and refused to budge from this price.  Plaintiff maintains that this unreasonably high price inhibited SJS's own marketing efforts.  (Doc. 4 ¶ 25.)  Based on its determination that Microtek had no intention of following through with the commercialization of the product, in August 2008, SJS informed Microtek that it was terminating the Contract effective February 28, 2009.  (Doc. 4 ¶ 27.)

On July 18, 2007, well before the Contract was terminated, Microtek allegedly filed a patent application directed to the commercial stethoscope sleeve dispenser jointly developed by both parties.  Ms. Giroux was not named as an inventor on the application, which issued as U.S. Patent No. 7,806,267 (the '267 patent).  (Doc. 4 ¶ 28.)  In late 2008, after SJS notified Microtek that it was terminating the Contract, SJS became aware of Microtek's patent application.  SJS was concerned that Ms. Giroux was not named as an inventor on the patent, because, as Plaintiff alleges, Ms. Giroux recommended key features of the '267 patent to Microtek.  (Doc. 4 ¶¶ 29, 30.)  Plaintiff

maintains that Ms. Giroux was responsible for the following key features of the '267 patent: that the sleeves be separated by perforated lines (Doc. 4 ¶¶ 31, 32); that the sleeve housing be made of a soft material (Doc. 4 ¶¶ 33–35); that the sleeve pocket be of an appropriate depth (Doc. 4 ¶ 36–38); that the slot in the housing from which the sleeves were pulled be an appropriate length (Doc. 4 ¶¶ 39, 40). Plaintiff alleges that Ms. Giroux was responsible for all these detailed specifications, each of which were incorporated into the '267 patent exactly as she specified. (Doc. 4 ¶¶ 31–40.) Plaintiff further maintains that Microtek recognized Ms. Giroux's contributions to the conception of the commercial product. (Doc. 4 ¶ 40.)

On April 7, 2009, just over a month after the Contract's effective termination date, David Pritchard, an attorney for SJS, wrote to Microtek reminding it of its obligations to name Ms. Giroux as an inventor on its patent application. In an affidavit attached to the letter, supported by six exhibits, Ms. Giroux detailed her contributions to the invention. (Doc. 4 ¶ 42.) Microtek submitted the affidavit to the USPTO, but not the supporting exhibits. (Doc. 4 ¶ 43.) The '267 patent issued on October 5, 2010. (Doc. 6, 3.) Ms. Giroux was not named as an inventor. (Doc. 4 ¶ 28.)

The main thrust of Plaintiff's Amended Complaint is that Ms. Giroux, and therefore SJS, either conceived of or contributed to the improvements that made the '267 patent possible and that Microtek has claimed those improvements as their own. (Doc. 4 ¶ 44.) In so doing, Defendant has effectively destroyed the value of SJS's '917 patent and precluded it from further pursuing its commercialization. (Doc. 4 ¶ 45.) Microtek has allegedly caused SJS to lose business opportunities because other companies have refused to deal with SJS for fear of an infringement action by Microtek.

(Doc. 4 ¶ 46.)  Plaintiff further alleges that Microtek breached the Contract by failing to name Ms. Giroux as an inventor of the '267 patent and by secretly applying for that patent.  (Doc. 4 ¶ 50.)  Accordingly, Plaintiff brings claims of breach of contract and correction of inventorship under 35 U.S.C. § 256.

## II.    Legal Analysis

Defendant Microtek moves to transfer this case under 28 U.S.C § 1404(a) to the Northern District of Georgia, Atlanta Division, or alternatively, to the Northern District of Mississippi, Eastern Division.  (Doc. 6, 1, 10.)  In the alternative, Microtek seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claim upon which relief can be granted.  The Court considers both requests separately.

### A.    Motion to Transfer Venue

Defendant Microtek first argues that the Court should transfer this matter to a more convenient district court.  (Doc. 6, 1, 4.)

#### 1.    Standard

Title 28 U.S.C. § 1404(a) states, "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "The burden of proof is on the moving party to demonstrate why a change of venue should be granted."  *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989).  Additionally,

6

"'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608 612 (6th Cir. 1984)).

### 2. Northern District of Georgia

Defendant first argues that this case should be transferred to the Northern District of Georgia, Atlanta Division.  Following the requirements of § 1404(a), the Court must first must determine if this matter could have been brought in the Northern District of Georgia.  *See* 28 U.S.C. § 1404(a).  In reviewing Plaintiff's Amended Complaint (Doc. 4 ¶¶ 4–7), the Court determines that just as jurisdiction and venue are established in the Southern District of Ohio, so too could they be established in the Northern District of Georgia.  *See* 28 U.S.C. §§ 1331, 1332(a), 13676(a), 1391(a) & (b).  Plaintiff does not dispute this conclusion.  (*See* Doc. 7.)

### 3. Public and Private Factors

Next, "in ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).  Private factors include "the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 241 n.6 (1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).  Public factors include "court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quoting *Gulf Oil*, 330 U.S. at 509).  Other potential factors used to determine whether a change of venue is warranted are (1) the nature of the suit; (2) the place of the events involved; (3) the relative ease of access to sources of proof; (4) the nature and materiality of testimony to be elicited from witnesses who must be transported; (5) the respective courts' familiarity with the applicable law and the conditions of their dockets; and (6) the residences of the parties.  *Centerville ALF, Inc v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002) (citing *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991)).

Defendant Microtek raises the following points here: (1) the relevant evidence is located in Georgia and cannot conveniently be transported to Ohio (Doc. 6, 7); (2) the likely witnesses are in Georgia, Mississippi, and Alabama (Doc. 6, 7); (3) the disputed events took place in Georgia and Mississippi (Doc. 6, 7–8); (4) the sole factor weighing against transfer is Plaintiffs' residence in Ohio (Doc. 6, 8); and (5) Plaintiffs' choice of forum has little connection to the cause of action (Doc. 6, 8–9).  The Court considers each of these arguments seriatim.

### a.    Access to Sources of Proof

One factor courts consider when ruling on a motion to transfer under § 1404(a) is

the relative ease of access to sources of proof. *Cherokee Exp. Co. v. Chrysler Int'l Corp.*, 142 F.3d 432, at *2 (6th Cir. Feb. 2, 1998) (unpublished table decision) (quoting *Int'l Car Show Ass'n v. ASCAP*, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992)). Defendant argues that this factor weighs in favor of transfer because "Microtek's facilities house all of the physical and documentary evidence relevant to the resolution of this case," and, "[i]t would be unduly burdensome for Microtek to transport evidence establishing its design and development practices to Ohio." (Doc. 6, 7.)

This factor does not weigh in favor of transfer because, first, transferring venue would merely shift the burdens here. Defendant may be burdened by transporting evidence to Ohio, but Plaintiffs would also be burdened by having to transport evidence to Georgia. "A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Wayne Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 975 (E.D. Mich. 2009) (citing *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990)). Defendant insists that it would be more inconvenienced than Plaintiff because Plaintiff "has alleged no evidence other than an affidavit and six emails," whereas Defendant alleges the existence of "physical evidence that cannot easily be transported to Ohio." (Doc. 8, 5, 6.) This is unavailing. Other than a reference to "materials and tooling," the relevance of which is unexplained (Doc. 8-1 ¶ 10; Doc. 8, 6), Defendant has not identified any potential physical evidence that would be difficult to transport. (*See* Docs. 6, 8.) The Court assumes (and Defendant has done nothing to disabuse the Court of this assumption) that any physical evidence relating to a patent on a stethoscope—a relatively small and lightweight device that can easily fit in one's pocket—would not be overly burdensome to transport.

Defendant's implication that relevant physical evidence includes "tooling" that would need to be "disassembled, shipped, and reassembled" is incredible. (Doc. 8-1 ¶ 10.) In other words, as Plaintiffs imply (Doc. 7, 5), Defendant has not credibly demonstrated why transporting evidence to Ohio would be unduly burdensome. (*See* Docs. 6, 8.) Given that the burden of proof is on Defendant to demonstrate why a change of venue should be granted, *Hanning*, 710 F. Supp. at 215, their failure to support their contentions here is inexcusable. This factor does not weigh in favor of transfer.

### b. Convenience of the Witnesses

"'Probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a), is the convenience of witnesses.'" *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 852 (S.D. Ohio 2007) (quoting 15 C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure*, § 3851). Here, Defendant argues that all of its likely witnesses are located in Georgia, Mississippi, or Alabama. They contend that this weighs in favor of transfer. (Doc. 6, 7.) However, Plaintiffs argue that because this case can only be transferred to one state, and not to Georgia, Mississippi, and Alabama simultaneously, "transfer can do little to alleviate Microtek's purported concerns," because, "Microtek's witnesses will have to travel regardless of the disposition of this motion." (Doc. 7, 7.) Plaintiffs additionally argue that the one key witness in this case, Ms. Giroux (the inventor of the '917 patent and an alleged co-inventor of the '267 patent (Doc. 3 ¶¶ 8–10, 52), resides and works in Ohio, and traveling out of state would be a personal and financial burden to her. (Doc. 7, 6.)

Defendant identifies "at least ten material witnesses located outside Ohio with

significant personal knowledge of the '267 patent's conception." (Doc. 8, 3.) However, "the proper analysis is not to focus 'on the number of witnesses in each location' but on willing witnesses' 'accessibility and convenience to the forum.'" *Duha v. Agrium, Inc.*, 448 F.3d 867, 878 (6th Cir. 2006) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir. 1984)). Furthermore, "[i]n weighing the convenience of the witnesses, more important than the raw numbers of witnesses living in a particular jurisdiction is the residence of the key witness or witnesses." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001). Ms. Giroux is undoubtedly a key witness in this case. As such, her convenience is at least as important as Defendant's proposed witnesses. *See id.* The Court appreciates that Defendant's "primary development personnel" would be inconvenienced by having to travel to Ohio (Doc. 8, 4–5), but its assertions of inconvenience are not so strong as to justify disturbing Plaintiff's choice of forum here. *See Reese*, 574 F.3d at 320 (stating that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). This factor does not weigh in favor of transfer.

### c. The Location of the Events

The location of the events giving rise to the dispute is yet another factor considered in ruling on § 1404(a) motion to transfer. *Centerville ALF*, 197 F. Supp. 2d at 1049; *see also United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 922 (W.D. Tenn. 2010) (naming "the location of the events that gave rise to the dispute" as one factor to consider on a motion to transfer venue). Defendant argues that the location of the events at issue in this case warrant transfer because those events took place in Georgia and Mississippi. (Doc. 6, 7–8.) As Defendant

states, "virtually all of the events material to this dispute occurred in Georgia and Mississippi." (Doc. 8, 7.) However, as Plaintiff argues, the conception and communication of the contributions Ms. Giroux made to the '267 patent occurred in Ohio. (Doc. 7, 8.) The majority of relevant events may have occurred in Georgia and Mississippi, but it is incorrect to say that no essential events occurred in Ohio—all three locations are relevant in that respect. When balancing the events that occurred in Ohio and the events that occurred in Georgia and Mississippi, the results are not so lopsided as to warrant disturbing Plaintiff's choice of forum. *See Reese*, 574 F.3d at 320. This factor does not favor either party.

### d. Plaintiff's Residence

The residence of the parties is another factor relevant to a motion to transfer. *Centerville ALF*, 197 F. Supp. 2d at 1049. Defendant contends that the sole factor weighing against transfer is Plaintiff's residence in Ohio. (Doc. 6, 8.) Based on that assumption, Defendant maintains that its burden to show that a transfer is warranted is low "where the only factor weighing against transfer is the plaintiff's residence." (Doc. 6, 8.)

First, based on the above analysis, this Court disagrees that the only factor weighing against transfer is Plaintiff's residence. Second, the case Defendant relies on for support here, *Lassak v. American Defense Systems, Inc.*, No. 2:06-cv-1021, 2007 U.S. Dist. LEXIS 36547, 2007 WL 1469408 (S.D. Ohio May 18, 2007), is distinguishable in several respects. Most importantly, the plaintiff in *Lassak* worked full time in the alternative forum, he maintained a second residence there, and he spent the majority of his time there. *Id.* at *3. None of those facts exist here. (*See* Doc. 4.) Furthermore,

12

the *Lassak* court did not hold, as Defendant contends (Doc. 6, 8), that a defendant's burden is low where the only factor weighing against transfer is the plaintiff's residence, *Id.* at 3.  Instead, the *Lassak* court engaged in the same balancing test as this Court does here.  Defendant's point that residence alone is not dispositive is well taken.  *See id.*  However, as Defendant concedes (Doc. 6, 8), the fact that Plaintiff's residence is within the Southern District of Ohio is a relevant factor that weighs against transfer.

### e.    Plaintiffs' Choice of Forum

Defendant's final argument is that Plaintiff's choice of forum should not be given deference because there is no connection between the dispute and this forum.  (Doc. 6, 9.)  Although "a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive."  *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998) (citing *DeMoss v. First Artists Prod. Co.*, 571 F. Supp. 409, 413 (N.D. Ohio 1983)).  However, "a plaintiff's choice of forum is entitled to substantial consideration . . . . where the plaintiff also resides in the chosen forum."  *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004) (citing *FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993)).  "On the other hand, the plaintiff's choice of forum is entitled to significantly less weight where the forum has no connection with the matter in controversy."  *Id.* (citing *Lynch v. Vanderhoef Builders*, 237 F. Sup. 2d 615, 617 (D. Md. 2002)).

Because Plaintiff resides in its chosen forum (*see* Doc. 4 ¶ 2), Defendant is incorrect where it asserts that Plaintiff's choice of forum "should not be given deference," (Doc. 6, 9).  Rather, Plaintiff's choice of forum is entitled to "substantial consideration" here precisely because it "also resides in the chosen forum."  *Steelcase*,

336 F. Supp. 2d at 720.  Accordingly, Defendant's argument here is not well taken.

Because Plaintiff resides in its chosen forum, this weighs against transfer.  *See id.*

In sum, Defendant has not presented sufficient evidence to carry its burden of

demonstrating why a change of venue should be granted.  *See Hanning*, 710 F. Supp.

at 215.  Because the balance of factors is not strongly in favor of Defendant, Plaintiff's

choice of forum will not be disturbed.  *See Reese*, 574 F.3d at 320.  Thus, upon

consideration of the parties' convenience and the interests of justice, *see* 28 U.S.C. §

1404(a), which includes a balancing of the relevant public and private factors, *Moses*,

929 F.2d at 1137, Defendant's motion to transfer venue to the Northern District of

Georgia, Atlanta Division, is DENIED.

### 4.    Northern District of Mississippi

Defendant Microtek alternatively argues that the Northern District of Mississippi,

Eastern Division, is also a more appropriate venue than the Southern District of Ohio

under § 1404(a).  (Doc. 6, 10.)  The Court rejects this argument for the same reasons it

rejects Defendant's motion to transfer to the Northern District of Georgia.  Simply

changing the forum from Georgia to Mississippi does nothing to overcome the

deference this Court gives to Plaintiff's choice of forum.  Defendant's motion to transfer

venue to the Northern District of Mississippi, Eastern Division, is DENIED.

### B.    Motion to Dismiss

Defendant Microtek also moves for dismissal under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  Defendant argues that Plaintiff's Amended Complaint fails to

state a claim upon which relief can be granted.  (Doc. 6, 1.)

14

1.      **Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, *passim* (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The complaint need not contain detailed factual allegations, yet it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at 1949 (citing

*Twombly*, 550 U.S. at 555).  A pleading that offers labels and conclusions or merely a formulaic recitation of legal elements will not do.  *Id.*  Nor does a complaint suffice if it tenders naked assertions devoid of factual enhancement.  *Id.*  While a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555).

A court may consider the following when ruling on a motion to dismiss: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.  *Smith v. Bd. of Trs. Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 889 (N.D. Ohio 2010) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924–25 (N.D. Ohio 2009)); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.")  Accordingly, the Court may consider the Contract at issue here because it was attached to and referred to in the pleadings.  *See Smith*, 746 F. Supp. 2d at 889.

### 2.    Failure to State a Claim—Breach of Contract

Plaintiff's first claim alleges breach of contract.  (Doc. 4 ¶¶ 48–51.)  Delaware law governs the Contract here.  (Doc. 7, 9; *see also* Doc. 1-1, 11) ("This Agreement shall be construed under and interpreted under the Laws of the State of Delaware, USA, except that questions affecting the construction and effect of any Patent shall be determined by

16

the national law of the country in which the Patent has been granted.")  "[T]o survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citing *Winston v. Mandor*, 710 A.2d 835, 840 (Del. Ch. 1997)).  Defendant does not argue the existence of a valid contract here.  Instead, Defendant argues that "Microtek did not breach any obligations owed to SJS and SJS has not suffered any damages."[2] (Doc. 6, 11.)

Plaintiff's Amended Complaint states Microtek breached its obligations in the Contract as follows: "Microtek breached the contract by, without limitation, failing to name Mrs. Giroux as an inventor on the Microtek '267 patent covering improvements to [SJS's] '917 patent that were conceived, in part, by Mrs. Giroux, and secretly applying for that patent."  (Doc. 4 ¶ 50.)  Defendant attacks this language in two ways: first, it argues that the Contract does not restrict either party's right to seek patents for new inventions, and second, it argues that Microtek was under no obligation to inform SJS that it would seek a patent for its own invention.  (Doc. 6, 12.)

### a.  Failing to Name Ms. Giroux as an Inventor of the '267 Patent

Defendant first argues that the Amended Complaint fails because the Contract "does not include any provision stating who should be named as inventors."  (Doc. 6, 12.)  As Defendant states, "there can be no breach of contract based on failing to name

---

[2] Despite its mention of damages here, Defendant never specifically argues that the Amended Complaint's allegation of damages is insufficient. (*See* Docs. 6, 8.)  Defendant apparently means to argue that Plaintiff suffered no damages because Defendant did not breach any obligations owed to SJS. Thus, the only issue considered here is the second element of a breach-of-contract claim—whether there was a breach of an obligation imposed by contract.  *See VLIW Tech.*, 840 A.2d at 612.

Mrs. Giroux as an inventor, because inventorship is [a] matter of patent law, not contract law." (Doc. 6, 12.) However, Plaintiff points to a specific provision of the Contract it alleges was breached. Section 5.1 of the Contract provides that "[SJS] and Microtek agree that any Improvements to the Product jointly invented by Microtek and [SJS] shall be jointly owned by Microtek and [SJS]." (Doc. 7, 9; Doc. 1-1, 5.) Plaintiff maintains that the Amended Complaint "specifies the improvements conceived and contributed by Mrs. Giroux and alleges their inclusion in the '267 patent." (Doc. 7, 10) (citing Doc. 4 ¶¶ 30–40). Accordingly, Plaintiff argues, "Microtek has breached the contract by applying for and acquiring legal ownership of improvements to the product jointly invented by Microtek and [SJS] in direct contradiction to Section 5.1 of the contract." (Doc. 7, 10.) Defendant counters that "SJS conflates the concept of ownership with the concept of inventorship," that the Contract "controls *ownership*, and not *inventorship*," and that "[t]he Amended Complaint refers only to inventorship." (Doc. 8, 10.) Defendant's arguments are not well taken here.

The Contract requires that "any Improvements to the Product jointly invented by Microtek and [SJS] shall be jointly owned by Microtek and [SJS]." (Doc. 1-1 § 5.1.) The Amended Complaint alleges that Microtek violated this section by retaining sole ownership of improvements invented by Ms. Giroux. (Doc. 4 ¶ 44.) Defendant argues for a distinction between ownership and inventorship that does not exist in the language of the Contract, and it is incorrect where it states that "[t]he Amended Complaint refers only to inventorship." (Doc. 8, 10.) The Amended Complaint is very clear about Microtek's alleged violations and about how those violations breached obligations imposed by the Contract. (Doc. 4 ¶¶ 30–46.) Therefore, Defendant's motion to dismiss

is DENIED in this respect.

### b. "Secretly Applying" for the '267 Patent

Defendant also argues that "[t]he allegation that Microtek 'secretly' applied for the '267 patent also does not state a plausible claim for relief," because the Contract does not require "Microtek to tell SJS when it applies for patents." (Doc. 6 ¶ 12.) Defendant is correct that the Contract does not require notification to SJS when Microtek applies for a patent. (*See* Doc. 1-1.) However, that does not appear to be Plaintiff's precise claim. The Amended Complaint is clear in the allegation that Defendant breached the Contract when it retained sole ownership of improvements invented by Ms. Giroux. (Doc. 4 ¶ 44.) Plaintiff's mention of Microtek's "secret pursuit of its own patent" seems to be nothing more than a rhetorical flourish rather than a self-contained claim for breach of contract. (Doc. 4 ¶ 45; *see also* Doc. 4 ¶¶ 1, 28, 50.) Plaintiff does not respond to Defendant's arguments on this point. (*See* Doc. 7.) Accordingly, if Plaintiff did indeed mean to state a claim for breach of contract based on the allegation that Microtek "secretly" applied for the '267 patent, that claim fails as a matter of law because Microtek was under no contractual obligation to notify SJS when it applied for a patent. Defendant's motion to dismiss is GRANTED to this extent, although to be clear, the Court does not believe that Plaintiff meant to state such a claim, and the remainder of Plaintiff's breach-of-contract claim is unaffected by this ruling.

### 3. Failure to State a Claim—Correction of Inventorship

Plaintiff's second claim alleges correction of inventorship. (Doc. 4 ¶ 52.) Under 35 U.S.C. § 256, "a co-inventor omitted from an issued patent may be added to the patent by a court 'before which such matter is called in question.'" *Ethicon, Inc. v. U.S.*

*Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998) (quoting *Hess Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997)).  "Because 'conception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention."  *Id.* (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227–28 (Fed. Cir. 1994)).  Courts require corroborating evidence of conception.  *Burroughs Wellcome*, 40 F.3d at 1228.  However, "a co-inventor need not make a contribution to every claim of a patent.  A contribution to one claim is enough." *Ethicon*, 135 F.3d at 1460 (internal citation omitted) (citing 35 U.S.C. § 116 and *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 888 (Fed. Cir. 1988)).

"Conception is defined as the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice."  *Id.* (internal quotations omitted) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed. Cir. 1986)).  "Conception is complete when 'the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.'"  *Id.* (quoting *Burroughs Wellcome*, 40 F.3d at 1228).  The Federal Circuit expanded on the test for conception as follows:

> [T]he test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure.  An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. The conception analysis necessarily turns on the inventor's ability to describe his invention with particularity.  Until he can do so, he cannot prove possession of the complete mental picture of the invention.  These rules ensure that

> patent rights attach only when an idea is so far developed
> that the inventor can point to a definite, particular invention.

*Burroughs Wellcome*, 40 F.3d at 1228 (internal citations omitted).

Defendant first argues that "SJS does not plead any facts that show Mrs. Giroux conceived any of the '267 patent's claims."  (Doc. 6, 13.)  This argument is not well taken.  As Plaintiff points out (Doc. 7, 11), the Amended Complaint does plead facts showing that Ms. Giroux conceived of a contribution to one of the patent's claims. Specifically, the Amended Complaint states as follows:

> 30.    In fact, it was Mrs. Giroux who recommended key features of the '267 patent to Microtek.

> 31.    For Example, Claim 1 of the Microtek '267 patent is directed to: "An article comprising: two or more sleeves that are (i) connected to one another, and (ii) separated from one another via at least one line of perforations that enables the two or more sleeves to be separated from one another along the at least one line of perforations . . . ."

> 32.    Mrs. Giroux emphasized to Microtek the importance of connected sleeves separated by perforated lines, and even showed Microtek a sample of connected sleeves.

(Doc. 4 ¶¶ 30–32.)  This is an unambiguous allegation that Ms. Giroux conceived of a contribution to one of the '267 patent's claims.

Furthermore, Plaintiff satisfies the requirement of pleading "corroborating evidence of conception," *Burroughs Wellcome*, 40 F.3d at 1228, by pointing to the "affidavit in which Mrs. Giroux detailed her contributions to the invention," and to the corresponding "six exhibits supporting Mrs. Giroux's contributions."[3]  (Doc. 4 ¶ 42.) Defendant maintains that "the exhibits SJS cites do not support its allegations."  (Doc. 8,

---

[3] A copy of Ms. Giroux's affidavit (Doc. 6-1, 5–11) is attached to Defendant's motion.  The six exhibits supporting the affidavit (Doc. 8-1, 5–14) are attached to Defendant's reply in support.  The Court may rightly consider them here given that they are referred to in the Amended Complaint and are central to Plaintiff's allegations.  *See Smith*, 746 F. Supp. 2d at 889.

12.)  The Court disagrees with this conclusion.  Several of the emails included in the exhibits show that Ms. Giroux made specific suggestions about how to improve the product.  (Doc. 8-1, 9, 11, 13.)  Plaintiff goes on to allege that these specific suggestions were incorporated as key features of the '267 patent.  (Doc. 4 ¶¶ 30, 31–40.)  Given the requirement that this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," *Bassett*, 528 F.3d at 430, this Court has no trouble concluding that Plaintiff has successfully alleged conception as supported by contemporaneous, corroborating evidence, *see Burroughs Wellcome*, 40 F.3d at 1228.

Defendant also argues that "SJS's allegations merely suggest that Mrs. Giroux participated in the Stethoclean product's design," rather than showing that she is a co-inventor.  (Doc. 6, 13.)  But this is incorrect.  As discussed above, the Amended Complaint specifically alleges that Ms. Giroux conceived of contributions that became part of the '267 patent's claims.  (Doc. 4 ¶¶ 30–32.)  Defendant attempts to blur the line between Ms. Giroux's "consulting obligations" and her claim of inventorship (Doc. 8, 11), but this is an artificial distinction given the Amended Complaint's allegations: the Amended Complaint undisputedly alleges that Ms. Giroux "contributed to—and even conceived" of the improvements that became part of the '267 patent.  (Doc. 4 ¶ 44.)

In conclusion, Plaintiff has stated a claim upon which relief can be granted.  S*ee* Fed. R. Civ. P. 12(b)(6).  As a result, Defendant's motion to dismiss Plaintiff's claim for correction of inventorship under 35 U.S.C. § 256 is DENIED.

## III.    Conclusion

For the foregoing reasons, Defendant Microtek's Motion to Transfer Venue or to

Dismiss for Failure to State a Claim (Doc. 6) is **DENIED in PART and GRANTED in PART**.  More specifically, the Court holds as follows:

- Defendant's motion to transfer venue to the Northern District of Georgia, Atlanta Division, is **DENIED**.

- Defendant's motion to transfer venue to the Northern District of Mississippi, Eastern Division, is **DENIED**.

- Defendant's motion to dismiss Plaintiff's breach-of-contract claim based on Defendant's argument that the Contract does not restrict either party's right to seek patents for new inventions is **DENIED**.

- Defendant's motion to dismiss is **GRANTED** to the extent that Plaintiff meant to state a claim for breach of contract based on the allegation that Microtek "secretly" applied for the '267 patent.

- Defendant's motion to dismiss Plaintiff's claim for correction of inventorship under 35 U.S.C. § 256 is **DENIED**.

     **IT IS SO ORDERED**.

_s/Michael R. Barrett_
United States District Judge
